| | | | |
|---|---|---|---|
| AO 91 (Rev. 11/11) Criminal Complaint | AUSA: Barrington Wilkins<br>Special Agent: Brad Bartram | Telephone: (313) 226-9621<br>Telephone: (313) 234-4000 | |

# UNITED STATES DISTRICT COURT
for the

Eastern District of Michigan

| | |
|---|---|
| United States of America<br>v.<br>Roberto ANAYA | Case: 2:26−mj−30023<br>Assigned To : Unassigned<br>Assign. Date : 1/13/2026<br>Description: USA V. SEALED (DJ) |

Case No.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __October 2025__ in the county of __Wayne__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(A) | Possession with intent to distribute methamphetamine and fentanyl |

This criminal complaint is based on these facts:
See affidavit

☑ Continued on the attached sheet.

_Complainant's signature_

Special Agent Brad Bartram
_Printed name and title_

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: January 13, 2026

City and state: Detroit, MI

_Judge's signature_

Hon. Elizabeth A. Stafford, U.S. Magistrate Judge
_Printed name and title_

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Brad Bartram, being sworn, depose and state the following:

## INTRODUCTION

1. This affidavit is in support of a criminal complaint charging Roberto ANAYA with possession with intent to distribute methamphetamine, a schedule II-controlled substance in violation of Title 21, United States Code, Sections. 841(a)(1) and (b)(1)(A) as well as possession with the intent to distribute Fentanyl, a schedule I – controlled substance in violation of Title 21, United States Code, Sections. 841(a)(1) and (b)(1)(A).

2. I am a Special Agent with Drug Enforcement Administration (DEA) and have been employed in this capacity since December 2018. I am presently assigned to the DEA Detroit Division Office in Detroit, Michigan. I have successfully completed a sixteen (16) week DEA Basic Agent Training Academy at the Drug Enforcement Administration Academy in Quantico, Virginia. This training included instruction in the investigation of federal drug violations, including, but not limited to, Title 21, United States Code, Sections 841(a)(1) and 846. I have assisted in approximately 15 to 20 narcotics investigations that have led to the seizure of narcotics and the arrests of numerous individuals. I have used various methods of investigation including but not limited to physical surveillance, electronic surveillance, phone toll analysis, records research, executed search warrants, trash

searches, photo and video analysis, interviews of confidential informants, defendants and witnesses. I have discussed with law enforcement officers, cooperating defendants, and informants, the methods and practices used by narcotics distributors. I am a law enforcement officer as defined by federal statutes. In addition, I have completed various training provided by the DEA and local law enforcement agencies, including, but not limited to training on identifying characteristics associated with the manufacture, sale, and transportation of various narcotics, including, but not limited to phencyclidine (PCP), methamphetamine, heroin, cocaine, and marijuana. This training involved the use, possession, packaging, sale, concealment, manufacturing, and transportation of various controlled substances as well as its precursors and chemicals used in the manufacturing process.

3.     I have participated in narcotics investigations either as a case agent or in a supporting role. I have assisted on the execution of approximately twenty (20) federal and state narcotics search warrants that resulted in the arrest of suspects and seizure of narcotics. I have debriefed approximately five (5) defendants, informants, and witnesses who had personal knowledge regarding narcotics trafficking organizations. Additionally, I have participated in many aspects of drug investigations including but not limited to, undercover operations, conducting physical and

electronic surveillance, and arrests. I have conducted and been involved in investigations regarding the unlawful manufacture, possession, distribution, and transportation of controlled substances, as well as conspiracies associated with controlled substance offenses, in violation of Title 21, United States Code, §§ 841(a)(1), 841(c)(2), 843, and 846. As a result, I am familiar with narcotics traffickers' methods of operation including the distribution, storage, manufacturing, and transportation of narcotics and the collection of money proceeds of narcotics trafficking.

4. I make this affidavit based on my participation in this investigation, as well as information received from other law enforcement officials and/or their reports and records. The information outlined herein is provided for the limited purpose of establishing probable cause and does not contain all information known to law enforcement pertaining to this investigation.

5. As set forth in more detail below, this investigation has shown that on or about October 30, 2025, Roberto ANAYA traveled from Detroit, Michigan (the Eastern District of Michigan) and into the Ohio area when he was found in Possession of approximately 2,249 gross grams of methamphetamine and approximately 311 gross grams of fentanyl. There is probable cause to conclude ANAYA possessed with an intent to distribute

methamphetamine in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

## PROBABLE CAUSE

6.     In October 2024, members of DEA identified a cocaine source of supply in the greater Detroit area named Roberto ANAYA who a confidential source (CS-1) could purchase narcotics from. CS-1 has been deemed by law enforcement to be honest and reliable in the information provided. The information that CS-1 has provided has been corroborated and independently verified by law enforcement and found to be truthful and accurate on multiple occasions. Information provided has been corroborated by law enforcement in multiple ways including but not limited to surveillance, controlled purchases of illegal narcotics, law enforcement databases, and phone toll analysis. Information previously provided by CS-1 has been utilized by law enforcement and led to the seizures of illegal narcotics, bulk US currency, and firearms. Information from CS-1 has also assisted law enforcement in previous arrests and convictions of drug traffickers. CS-1 is working with law enforcement for financial compensation.

7.     During this investigation, CS-1 purchased cocaine from ANAYA on several occasions under agent supervision. Before and after each

controlled purchase agents searched CS-1 and CS-1's vehicle for other contraband and found none. Each time, agents gave CS-1 prerecorded funds to pay for the drugs and provided an audio recording device. Agents conducted surveillance of each controlled purchase and then maintained constant surveillance of CS-1 before and after the sales.

8. The investigation has revealed that Roberto ANAYA is operating within a DTO based in the Detroit area that is responsible for distributing large amounts of fentanyl and cocaine throughout Michigan, Ohio, and Tennessee.

9. On October 30, 2025, Ohio State Highway Patrol (hereafter referred to as "OHSP") conducted a traffic stop on ANAYA's Ford Fusion bearing Michigan plate (9QRD56) for a traffic violation, on I-75 near mile marker 209. OSHP made contact with the driver, ANAYA, and a female passenger. During the encounter, ANAYA and the female passenger illustrated inconsistent responses for their travel. OSHP deployed an OSHP certified drug canine to conduct a free air sniff, around the vehicle. The OSHP canine indicated to the presence of a narcotic odor emitting from the Ford. A probable cause search was conducted and OSHP located approximately 2,249 gross grams of white, crystal-like substance and 311 gross grams of off-white, powder-like substance. OSHP transported ANAYA

to the Lucas County Jail, for possession of methamphetamine, trafficking in methamphetamine, and for possession of fentanyl.

10. The suspected controlled substance was sent to the OSHP Crime Lab for testing. OSHP maintained complete care, custody, and control of the recovered contraband. The laboratory analysis resulted in a positive result for methamphetamine.

11. The other clear plastic bag containing approximately 311 gross grams of an off-white, powder-like substance recovered on October 30,2025, from Roberto ANAYA was also sent to the OSHP Crime Lab for testing. The chemical analysis resulted in a positive result for fentanyl, with the presence of Xylazine.

12. Based on my training and knowledge, the volume of controlled substances and the manner in which they were being transported is indicative of a broader drug trafficking effort that is involved in the further distribution of the controlled substances.

## CONCLUSION

13. Based on the above, probable cause exists to show that Roberto ANAYA possessed with the intent to distribute methamphetamine and fentanyl in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

_____
Brad Bartram
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me
or by reliable electronic means.

_____
Hon. Elizabeth A. STAFFORD
United States Magistrate Judge